Verdia Mary HARMON, James Henry Harmon, Jr., Jerry Durandy Harmon, James Paul Harmon, Guvado Joe Harmon and Wanda Diane Harmon, Respondents,

v.

L. R. RAINEY, Appellant.

No. 46073.

Supreme Court of Missouri, Division No. 2.

Nov. 12, 1957.

Mobley & Cable, Kennett, for appellant L. R. Rainey.

McHaney & McHaney, Flake L. McHaney, William H. Billings, Kennett, for respondents.

STOCKARD, Commissioner.

James Henry Harmon died as the result of an accident occurring on September 10, 1955, which arose out of and in the course of his employment. This is an appeal by L. R. Rainey, the employer, from the judgment of the Circuit Court of Dunklin County affirming an award to the total dependents of Harmon under the Workmen's Compensation Law in the amount of $10,872.99 as compensation and for $400 funeral expenses. Appellant did not carry workmen's compensation insurance, and the above amount of compensation has been commuted and is immediately payable pursuant to Section 287.280 (all statutory references are to RSMo 1949, V.A.M.S.).

The only question on this appeal is whether appellant is subject to the Workmen's Compensation Law. He contends that he is not because he does not have "more than ten employees regularly employed" and therefore he is not a "major employer" within the meaning of Section 287.050, and that as a "minor employer" he has not elected to accept the application of the law as provided in paragraph (2) of Section 287.-090, and it has not been determined that he is engaged in an occupation hazardous to his employees, as provided in Section 287.070.

Appellant is the sole owner and operator of the "L. R. Rainey Feed and Seed" located in Senath, Missouri, and hereafter referred to as the "feed store." At this business he is engaged in buying and selling feed, seed and coal. He also operates grain elevators, some of which are located behind the feed store and some at the railroad tracks. He admits in his brief that he has "an average of nine or ten individuals reg-

ularly employed in that business." Harmon was employed as a truck driver for the feed store, and it was while he was operating a truck in the course of his employer's business that he was involved in the accident which resulted in his death. Appellant is also the sole owner and operator of "Rainey Motor Company," an automobile service station located in Senath, Missouri, where trucks and automobiles are serviced and repaired, and oil and gasoline sold. He admits in his brief that he has five persons regularly employed there. These businesses are not incorporated. The service station is separated from the location of the feed store by a street and a vacant lot. Appellant has made his quarterly reports in a single document covering all his employees in both operations to the Division of Employment Security and the Director of Internal Revenue, but, except for one employee, the employees at one business do not work at the other. A part time bookkeeper at the service station regularly worked at the feed store each year from six to eight weeks during the bean season. At such times she apparently worked only a few hours each day during the afternoons. It does not appear whether she received additional compensation for this work, and if so, to which operation it was charged. It is also not clear what she did at the feed store, but as she testified, "if I walked in and there was something I could do I did it." Sometime prior to 1950 appellant purchased workmen's compensation insurance, and when the service station was acquired by him in 1950 the employees of both operations were covered by the one policy. In August 1952, appellant personally signed an accident report to his insurance carrier reporting an accident to a mechanic at the service station in which he listed his business as "Feed and Seed Dealer Station Operator." This policy was canceled on April 10, 1953, by appellant and he stated that the "main reason" he did so was because the premium "got too high."

The referee of the Division of Workmen's Compensation found that appellant

"was a major employer as he had more than ten regular employees from January 17, 1953, until the date of the accident of September 10, 1955." It is not specifically stated whether this finding is based on the operations of the feed store alone or on the operations of both the feed store and the service station. The Industrial Commission affirmed the award without an additional opinion.

Appellant contends that he has less than ten employees regularly employed at the feed store, and that in determining whether or not he is a major employer within the meaning of Section 287.050, only the regular employees in the feed store may be counted because that is where Harmon was employed and the feed store and the service station are separate businesses even though each is solely owned and operated by him. This will depend upon the construction to be given the following provisions of The Workmen's Compensation Law.

Section 287.030. "The word 'employer' as used in this chapter shall be construed to mean: 1. Every person, * * * using the service of another for pay."

Section 287.050. "1. A 'major employer' shall mean an employer who has more than ten employees regularly employed. 2. A 'minor employer' shall mean an employer who has ten or less employees regularly employed."

Section 287.020. "The word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, * * *."

Section 287.060. "1. Every employer and every employee, except as in this chapter otherwise provided, shall be conclusively presumed to have elected to accept the provisions of this chapter and respectively to furnish and accept the compensation as herein provided, unless prior to the accident he shall have filed with the commission a written notice that he elects to reject this chapter."

Section 287.090. "Sections 287.050 to 287.080 and 287.120 of this chapter shall not apply to any of the following employments: * * * (2) Employments of farm labor and domestic servants including family chauffeurs; (3) employments which are but casual or not incidental to the operation of the usual business of the employer; (4) employments in which articles and materials are given out to be made up, cleaned, washed, altered, ornamented, finished, repaired, or adapted for sale in the home of the employee, or on premises not under the control or management of the employer; (5) employments by minor employers not determined to be engaged in an occupation hazardous to employees."

Appellant's position that "the deceased employee was not within the coverage of the Missouri Workmen's Compensation Law because appellant did not regularly employ more than ten employees in the business which deceased worked" reads something into the language of the above quoted statutes which is not there. The term "employer" includes every person using the services of another for pay. Appellant was using the services of every employee at the feed store and also at the service station, and he was an employer within the meaning of Section 287.030 in respect to the employees at both places. An employee is every person in the service of any employer under any contract of hire. Therefore, each individual working for appellant at the service station or at the feed store was an employee within the meaning of Section 287.020. Section 287.050 then defines a major employer as an employer who has more than ten employees regularly employed. There is nothing in the statutes to give the slightest indication that the Legislature intended that in order for an employer to be a major employer within the meaning of Section 287.050 he had to have more than ten employees employed in the same business.

The parties have cited to us no Missouri case ruling this precise point, and we have found none. However, the Missouri courts

have ruled that the employees that may be counted to constitute the required number need not be employed at the same place, or even within Missouri, because Section 287.-050 defines a major employer as " 'an employer who has more than ten employees regularly employed,' without restriction as to place," and the statute "is to be given its plain, unrestricted meaning." McFall v. Barton-Mansfield Company, 333 Mo. 110, 61 S.W.2d 911, 913. See also, Elsas v. Montgomery Elevator Company, 330 Mo. 596, 50 S.W.2d 130. Just as there is no restriction in the statutes as to the place of employment, there also is no restriction that the employees who may be counted to constitute the required minimum number must be employed in the same business. The only requirements are that they not be in an employment exempt from the application of Section 287.050 by reason of the provisions of Section 287.090, and that they all be employed by the same employer.

We note that of the various states which have in their workmen's compensation law a specified number of employees an employer must have before the law is applicable to him, a majority expressly provide by statute that the employees shall be in the same business or in the same business or establishment. 1 Larson, Workmen's Compensation Law, § 52.33. While Missouri does provide for a minimum number of employees (when the employer's occupation is not determined to be hazardous) before The Workmen's Compensation Law is applicable to an employer by compulsion, there is no provision, nor is there even an implication, in the statutes that the employees must be in the same business or establishment. It is reasonable to assume that if the Legislature so intended it would have incorporated such a provision in Section 287.090 where it did expressly provide that Section 287.050 shall have no application to employments of farm labor, domestic servants, and what is commonly referred to as "home work," and to employments which are but casual or not incidental to the operation of the usual business of the employer.

Appellant cites and relies on Threet v. Cox, 189 Tenn. 477, 226 S.W.2d 86; Merrick v. Street, Tex.Civ.App., 91 S.W.2d 851; and Cleveland, Columbus & Cincinnati Highway, Inc., v. Bookmyer, 67 Ohio App. 476, 37 N.E.2d 393. In the last case the applicable statute is not set out in the opinion, but Section 4123.01, Baldwin's Ohio Revised Code, defines an employer under The Ohio Workmen's Compensation Law as one employing three or more workmen regularly "in the same business or in or about the same establishment." The language of the decisions in the Texas and Tennessee cases appear to support appellant's position because we do not find that the statutes in those states require that the employees be employed in the same business. However, in the Tennessee case there is no discussion of the question, and the comments in the Texas case appear to be dicta. Larson criticizes the Tennessee case, and then comments as follows: "The failure [of the statutes] to make any limitation to a single business, especially when the majority of the statutes do so, should establish a strong presumption that the language means what it says without qualification. As to the purpose of the exemption, it is now generally agreed that is a matter of avoiding administrative inconvenience to very small employers. Therefore, if an employer is in a business on a large enough scale to hire an aggregate of the number of employees specified he can surely be expected to undertake the administrative and insurance burdens of compensation coverage whether the employees are all in one business or not." 1 Larson, Workmen's Compensation Law, § 52.33.

We are of the opinion that appellant is a major employer within the meaning of Section 287.050 because he had more than ten employees regularly employed at the feed store and service station. Therefore, we do not need to discuss his contentions that he had less than the minimum required number of employees at the feed store, and that there is no competent and substantial evidence to sustain a finding that ap-

pellant had one business and not two separate businesses.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.