Jerry KELLEY, Appellant,

v.

DeKALB ENERGY COMPANY, et al., Respondents.

No. 075757.

Supreme Court of Missouri, En Banc.

Nov. 23, 1993.

Dennis P. Wilson, C.H. Parsons, Jr., Dexter, for appellant.

Jeffrey P. Hine, Cape Girardeau, for respondents.

BENTON, Judge.

DeKalb AgResearch, Inc.—a predecessor to Defendant DeKalb Energy Company—employed Plaintiff Jerry Kelley at its Sikeston facility. In 1980, DeKalb built "corn flamers" by mounting flame-making machines on tractors, for the purpose of flaming corn plants just enough to retard their growth.

On July 15, 1982, DeKalb AgResearch and Pfizer Genetics, Inc., spun off DeKalb–Pfizer Genetics, a general partnership. As part of the partnership agreement, DeKalb–Pfizer obtained ownership of the Sikeston facility and its corn flamer. Kelley continued as a partnership employee.

On June 11, 1984, the corn flamer exploded, severely burning Kelley. The partnership settled Kelley's workers' compensation claim. Kelley then sued DeKalb Energy Company and five employees asserting negligent design, manufacture and construction of the corn flamer. The trial court granted summary judgment for all defendants. After opinion by the Court of Appeals, this Court granted transfer. Affirmed.

## I.

■ A partnership is an "employer" under workers' compensation law. *§ 287.030 RSMO 1986.* Under Missouri's version of the Uniform Partnership Act, a partnership is not a legal entity separate from the individual partners. *Scott v. Edwards Transportation Co.,* 807 S.W.2d 75, 81 (Mo.banc 1991); *Chap. 358, RSMo 1986.* An employee of a partnership is an employee of each individual partner. *Anderson v. Steurer,* 391 S.W.2d 839, 843 (Mo.1965); *Griffin v. Doss,* 411 S.W.2d 649, 651 (Mo.App.1967); *Rhodes v. Rogers,* 675 S.W.2d 107, 109 (Mo.App.1984). However, the converse is not necessarily true; an employee of an individual partner is not necessarily an employee of the partnership. *See Crall v. Hockman,* 460 S.W.2d 668, 672 (Mo. banc 1970).

■ The workers' compensation law excludes common law actions by employees against their employers for accidental injuries arising out of and in the course of employment. *§ 287.120 RSMo 1986.* Thus, a partnership employee may not sue a partner where there is workers' compensation coverage. *Anderson,* 391 S.W.2d at 843; *Scott,* 807 S.W.2d at 80; *Ballinger v. Gascosage Electric Co-op,* 788 S.W.2d 506, 515 (Mo. banc 1990).

■ Kelley relies on the holding in the *Crall* case. There, an employee setting tile at a partner's residence was permitted to sue that partner, avoiding the partnership's workers' compensation protection, because the partner acted as a separate employer. The partnership was a separate employing entity with no connection to the separate work. *Crall,* 460 S.W.2d at 672.

Kelley's case is different. In order to be confined to the remedies of workers' compensation, the employee must be working within the scope of the covered employer's business. *Id.* Kelley is confined to the remedies of workers' compensation because his injury occurred while performing work within the scope of the DeKalb–Pfizer partnership business.

Kelley contends that defendants' negligence occurred in 1980 when the corn flamer was originally constructed, before the partnership existed. Kelley believes this timing implicates a separate business (DeKalb Energy) distinct from the partnership business (DeKalb–Pfizer). "The controlling fact in establishing the exclusiveness [of workers' compensation remedies] is the relationship of the parties at the time of occurrence of the injury. Their relationship at other times, such as the time of employer's misconduct or the time of bringing the suit, is immaterial." 2A Arthur Larson, *Workmen's Compensation* § 65.13 (1993). Therefore, defendant DeKalb, as a partner, was Kelley's employer at the time the injury occurred and was released from all other liability except workers' compensation.

To allow recovery against defendant DeKalb under these facts is contrary to the workers' compensation law. The circuit court properly granted summary judgment as to defendant DeKalb.

## II.

The circuit court also granted summary judgment to five fellow employees who directly participated in the design, manufacture, or construction of the corn flamer.

When considering appeals from summary judgments, this Court reviews the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This Court also accords the non-movant the benefit of all reasonable inferences from the record. *Id.* The five defendants thus must show that there is no genuine dispute as to material facts, and that they are entitled to judgment as matter of law. *Rule 74.04(c); ITT Commercial Finance Corp.*, 854 S.W.2d at 380.

The employer has a nondelegable duty to provide a reasonably safe place to work. *Tauchert v. Boatmen's National Bank*, 849 S.W.2d 573, 574 (Mo. banc 1993); *Bender v. Kroger Grocery & Baking Co.*, 310 Mo. 488, 276 S.W. 405, 406 (1925); *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 177 (Mo.App.1982); *J.M.F. v. Emerson*, 768 S.W.2d 579, 581 (Mo.App.1989). Suits for breach of this duty are excluded by the workers' compensation law. *Badami*, 630 S.W.2d at 179. However, an employee may sue a fellow employee for affirmative negligent acts outside the scope of an employer's responsibility to provide a safe workplace. *Tauchert*, 849 S.W.2d at 574.

In the *Tauchert* case, the employee's supervisor arranged a "make-shift" hoist system to raise an elevator. The hoist failed injuring plaintiff. This Court held that the co-employee's actions may constitute an affirmative negligent act outside the scope of the employer's responsibility to provide a safe workplace. *Tauchert*, 849 S.W.2d at 574.

This case differs from *Tauchert*. Here, one of the individual defendants noticed a corn flamer being used by an Iowa competitor. With the permission of his supervisor, he adopted the competitor's design and tested various uses of the flamer. He reported his results to other executives and shared the information and written specifications with other plant managers through a formal presentation at a regional meeting. Most managers, including Sikeston's, adopted the design specifications and used the flamers for over four years. There were roughly twenty corn flamers in operation in the DeKalb system at the time of Kelley's injury. The employees—including two of the defendants along with Kelley—built the Sikeston flamer in accordance with the written specifications and under the direction of their supervisors.

Defendants demonstrated that the condition of the corn flamer was part of the employer's nondelegable duty to provide a safe workplace, shielding the co-employees from liability. There was no showing that the flamer was "make-shift" or "jerry-rigged." In fact, the design, manufacture, and construction of the corn flamers were an overall employer policy for a significant period of time.

Kelley failed to show a genuine dispute as to a material fact; defendants have a right to judgment as a matter of law. The judgment by the circuit court is affirmed.

All concur.