Jesse **GABRIEL**, Plaintiff–Appellant,

v.

**SHELTER MUTUAL INSURANCE COMPANY, Defendant– Respondent.**

No. 19558.

Missouri Court of Appeals,
Southern District,
Division One.

March 21, 1995.

Motion for Rehearing or Transfer
Denied April 11, 1995.

Application to Transfer Denied
May 30, 1995.

Daniel R. Ray, Hershewe & Gulick, Joplin, for appellant.

John G. Schultz, John L. Mullen, Franke & Schultz, P.D., Kansas City, for respondent.

FLANIGAN, Judge.

Plaintiff Jesse Gabriel brought this action against defendant Shelter Mutual Insurance Company, seeking damages of $209,737 and other relief. The action was based on benefits to which plaintiff was allegedly entitled, and which defendant had refused to pay, under an automobile insurance policy.

Each side filed a motion for summary judgment. Rule 74.04.[1] The trial court sustained defendant's motion and denied plaintiff's motion. Plaintiff appeals.

Plaintiff's first point is that the trial court erred in sustaining defendant's motion for summary judgment because: (a) "The trial court's construction of the supplementary payments provision supplied a 'family [or household] exclusion' to that provision which is not supplied by the policy"; (b) "Wichenda Gabriel is an 'other' under the supplementary payments provision, for whose necessary medical expenses plaintiff as an insured is entitled to reimbursement"; (c) "The supplementary payments provision is clear and unambiguous and the construction of that provision by the trial court supplied a definition of the term 'other,' which term is not itself defined by the policy"; and (d) "The trial court erred in its construction of the supplementary payments provision because if that provision contains any ambiguity, such ambiguity must be construed against defendant and in favor of providing coverage to plaintiff."

On appeal from a summary judgment, the record is viewed in a light most favorable to the nonmoving party, and that party is granted the benefit of all favorable inferences. *Lough v. Rolla Women's Clinic, Inc.,* 866 S.W.2d 851, 852[1] (Mo. banc 1993). However, if the judgment of the trial court is sustainable on any grounds, it will not be overturned on appeal. *Id.* [2]. "When reviewing a summary judgment, this Court views the pleadings, depositions, answers to interrogatories, and admissions on file with the trial court, together with affidavits, in determining if there is an issue of material fact and whether the moving party was entitled to judgment as a matter of law." *Cooper v. Missouri Bd. of Probation and Parole,* 866 S.W.2d 135, 136[1] (Mo. banc 1993).

The law of contracts applies to an insurance policy, and any claim or suit by either party must be based on the policy issued. *Bartleman v. Humphrey,* 441 S.W.2d 335, 342[1] (Mo.1969). The policy should be construed as a whole. *Dieckman v. Moran,* 414 S.W.2d 320, 321[2] (Mo.1967). To determine the intention of the parties to an insurance contract, the entire policy and not detached provisions or clauses must be considered. *Doty v. Am. Nat'l Ins. Co.,* 350 Mo. 192, 165 S.W.2d 862, 869[23] (1942). If the language of an insurance contract is clear and unambiguous, the court does not have

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1994, V.A.M.S.

the power to rewrite the contract for the parties and must construe the contract as written. *Madison Block Pharmacy, Inc. v. U.S. Fidelity and Guar. Co.*, 620 S.W.2d 343, 346[4] (Mo. banc 1981). The court's function is to construe, not make, insurance contracts. *Cent. Sur. & Ins. Corp. v. New Amsterdam Cas. Co.*, 359 Mo. 430, 222 S.W.2d 76, 80[5] (1949).

█ Existing and valid statutory provisions enter into and form a part of all contracts of insurance to which they are pertinent and applicable as fully as if such provisions were written into them. *Ward v. Allstate Ins. Co.*, 514 S.W.2d 576, 578[1] (Mo. banc 1974).

In *Meyer Jewelry Co. v. Gen. Ins. Co. of Am.*, 422 S.W.2d 617 (Mo.1968), the court said, at 623:

"We follow a construction favorable to the insured wherever the language of a policy is susceptible of two meanings, one favorable to the insured, the other to the insurer. Provisions restricting coverage are particularly construed most strongly against the insurer. '... [A]n insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer.'" (citations omitted).

"Taking its words in their ordinary and usual meaning, *no substantive clause must be allowed to perish by construction*, unless insurmountable obstacles stand in the way of any other course. *State Mut. Life Assur. Co. of Worcester v. Dischinger*, 263 S.W.2d 394, 401 (Mo.1953) (emphasis added)." *Harnden v. Continental Ins. Co.*, 612 S.W.2d 392, 394[1] (Mo.App.1981). *See also Mathews v. Modern Woodmen of Am.*, 236 Mo. 326, 139 S.W. 151, 155 (1911).

Plaintiff's policy is entitled "Automobile Insurance Policy." Its declaration page lists the following coverages: Coverage A—Bodily Injury, Coverage B—Property Damage, Coverage C—Medical Payments, Coverage D—Accidental Death, Coverage E—Uninsured Motorist, Coverage F—Collision, and Coverage G—Comprehensive. Except for Coverage A and Coverage B, for which one premium was payable, the respective coverages required payment of separate premiums. Plaintiff paid premiums only for Coverage A, Coverage B, and Coverage E. Plaintiff makes no claim that he was entitled to the benefit of Coverage C.

The declarations page included the following:

"Name and Address of Insured: Jesse O. and/or Wichenda M. Gabriel 404 Mobile Lane, St. Joseph, MO 64506"

The policy provisions included the following:

"INSURING AGREEMENTS

"I—Definitions

"Except where stated to the contrary, it is agreed that the following definitions apply:

.     .     .     .     .

(3) '**Bodily injury**' means bodily injury, sickness or disease, and includes death resulting therefrom at any time.

.     .     .     .     .

(11) '**Spouse**' means the spouse of the named insured who is a resident of and actually living in the same household as the named insured."

"II—AUTOMOBILE LIABILITY INSURANCE

"1. COVERAGE A—Bodily Injury Liability; COVERAGE B—Property Damage Liability—The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. Bodily injury sustained by any person;

B. Property damage sustained by any person;

Caused by accident and arising out of the ownership, maintenance, or use of the described automobile.... and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy....

"2. **Supplementary Payments**—With respect to such insurance as is afforded under Coverages A and B, the Company will pay, in addition to the applicable limits of liability ...

(c) Expenses incurred by the insured for such immediate medical or surgical relief to others as shall be imperative at the time of an accident involving an automobile insured hereunder and not due to war....

. . . . .

"4. **Persons Insured**—With respect to the insurance afforded under Coverages A and B, the following are insureds:

(a) With respect to the described automobile, (1) the named insured and, if an individual, his spouse....

The insurance afforded under Coverages A and B applies separately to each insured against whom claim is made or suit is brought, but the inclusion herein of more than one insured shall not operate to increase the applicable limit of the Company's liability.

. . . . .

"7. **Exclusions**—Coverages A and B do not apply to: ...

(n) Bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."

## "III—AUTOMOBILE MEDICAL PAYMENTS INSURANCE

"1. **COVERAGE C—Medical Payments**—The Company will pay all reason-

able expenses which are incurred within one year from the date of accident for necessary medical, surgical, x-ray, and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, for bodily injury caused by accident and sustained by:

(a) The named insured or relative (1) while occupying the described automobile . . .

(b) Any other person while occupying (1) the described automobile while being used by the named insured or spouse...."

On February 1, 1992, during the policy period, plaintiff Jesse Gabriel was involved in an automobile accident in St. Joseph. His wife, Wichenda Gabriel, was a passenger in the vehicle, which was "the described automobile" under the policy.[2] Wichenda Gabriel sustained injuries as a result of the accident, and the costs of her medical care amount to $209,737.

Defendant's motion pleaded, and plaintiff admitted, the following: Plaintiff's claim is based on Insuring Agreement II 2(c), the "Supplementary Payments" provision.[3]

Exclusion (n) of Insuring Agreement II is commonly called the "household exclusion." Defendant contends that plaintiff's claim is barred by the household exclusion. For the reasons which follow, this court agrees with that contention, and it is unnecessary to consider whether any other reason exists for barring coverage of plaintiff's claim.

In support of his contention that the household exclusion does not bar his claim, plaintiff argues:

"The family exclusion provision states that Coverages A (Bodily Injury Liability) and B (Property Damage Liability) do not apply to bodily injury to the insured or any member of the family of the insured resid-

**2.** Although the foregoing facts may give rise to the inference that Wichenda Gabriel was residing in the same household as Jesse Gabriel, defendant's motion for summary judgment did not plead that she was such a resident. However, plaintiff made the following statement in the trial court: "Jesse and Wichenda Gabriel were married in 1932 in St. Joseph, Missouri, and were living together as husband and wife on February

1, 1992...." Thus, she was "[a] member of the family of the insured residing in the same household as the insured." Plaintiff has never claimed that Exclusion (n) of Insuring Agreement II was factually unsupported.

**3.** This type of provision is referred to as a "First Aid Clause." See 42 A.L.R.2d 983, 986, § 3.

ing in the same household as the insured. The exclusion does not state that coverage under the Supplementary Payments Provision does not apply to medical expenses the insured incurs for the care and treatment of his spouse, also a named insured. Each section of Plaintiff's insurance contract has its own 'exclusions' section, and the contract itself limits the 'family exclusion' to Coverages A and B. If defendant intended the 'family exclusion' provision to apply to the Supplementary Payments Provision, then Defendant, as the author of the policy, had the opportunity to write this exclusion into the policy. Defendant did not do so. The trial court was without legal authority to do so on defendant's behalf."

In *Halpin v. Am. Family Mut. Ins. Co.,* 823 S.W.2d 479, 480[1] (Mo. banc 1992), the court held that the Motor Vehicle Financial Responsibility Law, §§ 303.010–303.370, "effects a partial invalidity" of a household exclusion clause. In *Baker v. DePew,* 860 S.W.2d 318 (Mo. banc 1993), the court said, at 323[8]:

"In [*Halpin* ] we held that a motor vehicle liability insurance policy issued pursuant to the Motor Vehicle Financial Responsibility Law (enacted in 1986) that fails to insure for the liability required by the act will be construed to cover the liability to the extent of the limits required by the statute. The limit in this case is $25,000, the amount applicable for bodily injury to any one person in any one accident."

Section 303.190.7 reads:

"Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants such excess or additional coverage the term '**motor vehicle liability policy**' shall apply only to that part of the coverage which is required by this section."

In *Shelter Mut. Ins. Co. v. Haney,* 824 S.W.2d 949 (Mo.App.1992), the court said, at 952–953:

"However, as we understand *Halpin,* the FRL did not render the household exclusion clause entirely void. Because § 303.190.2 requires motor vehicle liability insurance policies to provide coverage in only the amounts specified therein, insurers and their policyholders are free to make insurance contracts containing household exclusion clauses affecting coverage in excess of the amounts required by § 303.190.2. *Halpin,* at 482–83. *Halpin* states § 303.190.7 RSMo 1986, manifests to insureds that they have no basis for expecting coverage in excess of the requirements of § 303.190.2. *Halpin,* at 483."

Similarly, in *State Farm Fire & Casualty Co. v. Metcalf,* 861 S.W.2d 751 (Mo.App. 1993), this court said, at 754:

"However, *Halpin* did not completely eliminate the effectiveness of household exclusion clauses.

[A]s we understand the opinion [in *Halpin* ], the FRL [i.e., the Motor Vehicle Financial Responsibility Law] did not render the household exclusion clause entirely void. Because § 303.190.2 requires motor vehicle liability insurance policies to provide coverage in only the amounts specified therein, insurers and their policyholders are free to make insurance contracts containing household exclusion clauses affecting coverage in excess of the amounts required by § 303.190.2.

*State Farm v. Zumwalt,* 825 S.W.2d 906, 909 (Mo.App.1992) (footnote omitted)."

See also *Jasper v. State Farm Mut. Auto. Ins. Co.,* 875 S.W.2d 954, 957[7] (Mo.App. 1994).

In *Metcalf,* this court held that a household exclusion applied and relieved the insurer from its obligation to defend a lawsuit arising from an accident involving an insured person. This court said, at 755:

"Injured parties are protected, as a matter of public policy, for damages for personal injuries up to $25,000 per person and $50,000 per accident. A provision in liabil-

ity coverage that, if enforced, would otherwise defeat that purpose is void. This was the holding in *Halpin*. A provision that denies the requirement for State Farm to defend a claim brought by an injured party does not thwart the statutory protection defined in *Halpin*. The contractual obligation to defend claims for personal injury or property damage is a protection provided the insured, not the person injured. Such an exclusion does not violate public policy. State Farm's household exclusion clause, as it applies to defense of claims for personal injuries, is valid."

■ The effect of *Halpin* and the foregoing authorities, together with § 303.190.7, is that a household exclusion clause is void only to the extent that its application would deny the coverage required by § 303.190.2, which is "twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident." Here the parties agree that defendant paid Wichenda Gabriel $25,000, which satisfies the ruling in *Halpin*.

■ Insuring Agreement II deals only with Coverage A and Coverage B. Each of the other coverages is the subject of a separate insuring agreement. Under Exclusion (n), Coverages A and B do not apply to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.

Wichenda Gabriel is a named insured, as is plaintiff. Even if she had not been so named, she is an insured under Coverages A and B, under the facts here which involved the described automobile, because she is the spouse of plaintiff. She is also a member of the family of plaintiff and residing in the same household as plaintiff. Therefore, "bodily injury" to Wichenda Gabriel meets the language of Exclusion (n). Thus, under Insuring Agreement II, Coverages A and B do not apply to bodily injury of Wichenda Gabriel.

■ Insuring Agreement II 2(c), dealing with "Supplementary Payments," opens with this language: *"With respect to such insurance as is afforded under Coverages A and B, the Company will pay...."* Plaintiff's position accords no significance to the emphasized language. If plaintiff's position were sound, there would be little reason for an insured to buy Coverage C.

Insuring Agreement II 2(c) is inapplicable here because it applies "with respect to such insurance as is afforded under Coverages A and B," and no such coverage is afforded here. By reason of the foregoing authorities, it cannot properly be said that the $25,000 payment, made pursuant to the ruling in *Halpin* and § 303.190.2, was "such insurance as is afforded under Coverages A and B." Although § 303.190.2 formed a part of the policy as fully as if the provisions of that statute were written into it, *Ward v. Allstate Ins. Co., supra*, the same is true of § 303.190.7. The "Supplementary Payments" called for by Insuring Agreement II 2(c) is not a coverage required by the Motor Vehicle Financial Responsibility Law, Chapter 303.

Viewing the policy as a whole, Insuring Agreement II 2(c) is a part of Coverage A and, by reason of Exclusion (n), Coverage A does not apply to bodily injury to Wichenda Gabriel. It follows that Insuring Agreement II 2(c) does not apply. Plaintiff could have purchased coverage for the medical expenses involved here by obtaining Coverage C and paying a premium therefor, but chose not to do so.

The trial court properly sustained defendant's motion for summary judgment on the basis of Exclusion (n). Subpoint (a) of plaintiff's first point has no merit. This holding makes it unnecessary to consider plaintiff's other subpoints.

■ Plaintiff's second point is that the trial court erred in denying his motion for summary judgment. A denial of a motion for summary judgment is not subject to appellate review. *Nat'l Motor Club of Missouri, Inc. v. Noe*, 475 S.W.2d 16, 23 (Mo.1972); *Parker v. Wallace*, 431 S.W.2d 136, 137[2]

(Mo.1968); *Textile Workers Union v. Barcus,* 860 S.W.2d 29, 31[3] (Mo.App.1993).

The judgment is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.